**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| ANDREA GROVE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IOWA PLAYHOUSE, RONALD BERGERON and MICHAEL BERGERON,<br><br>Defendants. | CA NO. 1:20-CV-00027-SMR-CFB |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR NOTICE TO BE ISSUED TO SIMILARLY SITUATED INDIVIDUALS PURSUANT TO 29 U.S.C. § 216(b)**

**I.     INTRODUCTION**

Plaintiff Andrea Grove has brought this collective action on behalf of herself and all other similarly situated individuals who have worked as exotic dancers at Iowa Playhouse ("Defendant" or "Playhouse") strip club, seeking to recover unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*[1] Plaintiff Grove asserts that she and other exotic dancers working for Playhouse were all subject to the same rules and policies imposed by the Defendants, and were misclassified as independent contractors when they were, in fact, employees of Playhouse as a matter of economic reality, and thus subject to the protections of the FLSA. Plaintiff Grove contends that, as a result of this misclassification, Defendants failed to pay dancers working

---

[1] Plaintiff has also brought an individual retaliation claim under the FLSA, as well as claims under Fed. R. Civ. P. 23 for violations of Iowa state law based on the various fees and fines which Defendant required the dancers to pay. These claims are not at issue for purposes of this motion.

at Playhouse the minimum wage in violation of the FLSA. Plaintiff now seeks, pursuant to 29 U.S.C. § 216(b), permission to issue notice to all dancers who have worked at Playhouse during the last three years in order to advise potential opt-in plaintiffs that this lawsuit is pending and to enable them to decide whether to join the lawsuit.[2]

The standard for obtaining conditional certification under § 216(b) is lenient. Plaintiff need only show that the workers she seeks to notify were subject to a single decision, policy, or plan that allegedly violated the law. See Frazier v. PJ Iowa, LLC, 337 F.Supp.3d 848, 862–63 (S.D. Iowa 2018) ("conditional certification of a representative class is generally granted.") (internal quotations omitted). In a motion for conditional certification under the FLSA, unlike in a motion for class certification under Rule 23, the Plaintiff does not need to demonstrate that common questions will predominate, that a class action is superior, or that her claim is typical of those of other class members. Id. at 869–70 (citing Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 65 (E.D.N.Y. 2016)) ("'courts have repeatedly stated that Section 216(b)'s 'similarly situated' requirement is 'considerably less stringent' than the requirements for class certification under Federal Rule of Civil Procedure 23 ….'"). Instead, Plaintiff need only identify a common factual nexus between her situation and that of the individuals she seeks to notify. See Bouaphakeo v. Tyson Foods, Inc., 765 F.3d 791, 796 (8th Cir. 2014) (quoting O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 585 (6th Cir. 2009)) ("Plaintiffs may be similarly situated when 'they suffer from a single FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all plaintiffs.'").

---

[2] A proposed Notice is attached hereto as Exhibit A; a proposed opt-in form is attached hereto as Exhibit B.

Under this standard, courts routinely grant conditional certification and issue notice, particularly in FLSA collective actions brought by exotic dancers.³ As one court observed upon

---

³ See, e.g., Murray v. Silver Dollar Cabaret, Inc., 2017 WL 514323, at *2 (W.D. Ark. Feb. 8, 2017) (granting conditional certification to "all exotic dancers who worked for Defendants at the two clubs in question within a three year period … [and were] subject to the same alleged FLSA violation by not being paid minimum wage or compensated for overtime"); Woods v. Club Cabaret, Inc., 2015 WL 6444793, at *4 (C.D. Ill. Sept. 28, 2015) (conditionally certifying a class of exotic dancers who all worked at the same club pursuant to the same working conditions, observing that "[i]f these class members are not similarly situated, it is hard to imagine that a class could ever be conditionally certified"); Guzman v. Three Amigos SJL Inc., 2015 WL 4597427, at *6-9 (S.D.N.Y. July 30, 2015) (exotic dancers subjected to the same compensation policies were "similarly situated" for purposes of conditional certification under § 216(b)); Romero v. ABCZ Corp., 2015 WL 2069870 (S.D.N.Y. Apr. 28, 2015) (same, for a class of exotic dancers and disc jockeys); Kelsey v. Entertainment U.S.A. Inc., 67 F.Supp.3d 1061, 1065-66 (D. Az. Dec. 17, 2014); Coronado v. D N.W. Houston, Inc., 2014 WL 6674292 (S.D. Tex. Nov. 24, 2014); Espinoza v. Galardi South Enterprises, Inc., 2014 WL 5410307 (S.D. Fla. Oct. 23, 2014); Bonton v. Centerfold Entertainment Club, Inc., 2014 WL 12837002, at *2 (W.D. Ark. Oct 9, 2014); Verma v. 3001 Castor, Inc., 2014 WL 2957453 (E.D. Pa. June 30, 2014); Stevenson v. The Great American Dream, Inc., 2013 WL 4217128 (N.D. Ga. Aug. 14, 2013); Hughes v. Burie, 2014 WL 1572543 (N.D. Fla. Apr. 18, 2014) (denying motion to decertify FLSA claims brought by exotic dancers); Hart v. Rick's Cabaret Intern., Inc., 967 F.Supp.2d 901, 909-10 (S.D.N.Y. Sept. 10, 2013); Cruthis v. Vision's, 2013 WL 4028523 (E.D. Ark. Aug. 7, 2013); Calder v. GGC-Baltimore, LLC, 2013 WL 3441178, at *4 (D. Md. July 8, 2013); Watson v. W.W.D., Inc., 2013 WL 1947365 (W.D. La. Mar. 25, 2013) (Report and Recommendation), adopted in 2013 WL 1947182; Jones v. JGC Dallas LLC, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012); McFeeley v. Jackson Street Entertainment, LLC, 2012 WL 5928902, at *5 (D. Md. Nov. 26, 2012) (strip club that managed its dancers, handled all advertising, and required its dancers to sign-in, pay a house fee, and impose certain charges on the club's customers for dances, were the dancers' employer under the FLSA); Nesselrodte v. Underground Casino & Lounge, LLC, 2012 WL 4378163 (N.D.W.Va. Sept. 25, 2012); Ruffin v. Entertainment of the Eastern Panhandle, 2012 WL 761659 (N.D.W.Va. Mar. 7, 2012); D'Antuono v. C & G of Groton, Inc., 2011 WL 5878045 (D. Conn. Nov. 23, 2011); Clincy v. Galardi South Enterprises, Inc., 2010 WL 966639 (N.D. Ga. Mar. 12, 2010); Thompson v. Linda And A., Inc., 779 F.Supp.2d 139, 142 (D.D.C. Apr. 29, 2011); Green v. Plantation of Louisiana, LLC, 2010 WL 5256354, *11 (W.D. La. Nov. 24, 2010) (conditionally certifying FLSA claims brought by dancers who "were all allegedly … misclassified as independent contractors," "were all compensated in a similar manner," and "all performed substantially the same job duties"); In re Penthouse Executive Club Compensation Litigation, 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010); see also Foster v. Gold & Silver Private Club, Inc., 2015 WL 8489998, *5 (W.D. Va. Dec. 9, 2015) (granting summary judgment to exotic dancers on their status as employees under the FLSA, noting that "courts have consistently found exotic dancers to be employees under the FLSA…") (citing Thompson, 779 F.Supp. 2d at 151 (collecting cases)).

3

conditionally certifying FLSA claims brought by exotic dancers, all of whom worked at the same club and were subject to the same policies, "[i]f these class members are not similarly situated, it is hard to imagine that a class could ever be conditionally certified." Club Cabaret, 2015 WL 6444793 at *4. So too in the instant case, Plaintiff and all dancers who worked at Playhouse were similarly situated. The dancers all had the same job duties, were uniformly misclassified as independent contractors, and were subject to the same rules and compensation structure set by Playhouse. Considering an analogous set of facts, a court in this district recently granted conditional certification to a group of cable installation technicians alleging FLSA overtime violations, who were uniformly classified as independent contractors, and were paid a flat rate per job. See Oxford v. Broadband Installations of Iowa, LLC, No. 17-cv-178, Dkt. 47, p. 17 (Order granting Motion for Conditional Certification) (S.D. Iowa Dec. 19, 2017). Conditional certification is likewise appropriate in this case.

     In addition, notice should issue as soon as possible. Unlike in a class action brought under Rule 23, the statute of limitations in a collective action brought under the FLSA is not tolled with respect to collective action members merely by filing a complaint. See 29 U.S.C. § 256(b). Rather, each collective action member must affirmatively toll the statute of limitations for her claims by "opting into" the lawsuit. See Putman v. Galaxy 1 Mktg., Inc., 276 F.R.D. 264, 275 (S.D. Iowa 2011); 29 U.S.C. § 257. Notice is therefore essential to enabling potential opt-ins to assert their rights under the FLSA and, as the Supreme Court has noted, the issuance of early notice helps the court manage the case, allowing it to "ascertain the contours of the action at the outset." Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 172-73 (1989). For the reasons set forth below, the Court should conditionally certify, and allow notice to issue to, a

collective of all individuals who have worked as exotic dancers for Playhouse during the past three years and who were classified as independent contractors.

## II.     FACTUAL BACKGROUND

Playhouse is a strip club located in Council Bluffs, Iowa. Complaint, Dkt. 1, ¶ 7. Playhouse employs exotic dancers to perform stage dances and private dances for the Defendant's customers. Dkt. 1 ¶ 16. Playhouse classified Plaintiff Grove and all other dancers as independent contractors. Declaration of Andrea Grove, Ex. C, ¶¶ 2, 6; Declaration of Laure-Ann Feller-Thoms, Ex. D, ¶¶ 3, 12. In reality, however, Playhouse exercised strict control over all aspects of the dancers' work.

Playhouse required exotic dancers to work a minimum of three shifts each week. Ex. C, ¶ 8; Ex. D ¶ 4. Plaintiff and other exotic dancers were required to arrive at Playhouse between 6 PM and 8 PM for their scheduled shifts, and were required to stay at Playhouse until the club closed at 2 AM Tuesday-Thursday, or at 5AM Friday through Saturday. Id. If the dancers missed a shift or arrived late, they had to pay a fine to Playhouse. Ex. C, ¶ 9; Ex. D ¶ 4.

In order to perform at Playhouse, Plaintiff and other dancers were required to participate in "Amateur Night." Ex. C, ¶ 7. As part of this event, the dancers performed at Playhouse for several hours without compensation. Id. At the end of the night, a manager for Playhouse informs the dancers whether they have been chosen to come back to work at Playhouse. Id.

During their scheduled shifts, Plaintiff Grove and the other dancers were required to perform onstage dances periodically in accordance with rules set by Playhouse Iowa. Ex. C, ¶¶ 11-14; Ex. D ¶¶ 6, 11. Plaintiff Grove and the other dancers were required to perform a set of several songs and were required to be nude within one minute of beginning their stage set. Ex. C, ¶ 11; Ex. D ¶ 3. Defendants also required Plaintiff Grove and the other dancers to follow

detailed rules and guidelines which encompassed how they danced, what they wore, and how they interacted with customers while working at Playhouse. Ex. C ¶¶ 11-14; Ex. D ¶ 11. Defendants also set the prices customers paid Plaintiff Grove and other dancers for private dances. Ex. C ¶ 15; Ex. D ¶¶ 7-8.

Plaintiff Grove and the other dancers were required to pay Defendant a house fee of approximately $45 per night in order to dance at Playhouse. Ex. C ¶ 10; Ex. D ¶ 5. Defendants did not pay any wages to Plaintiff Grove or the other dancers who worked at Playhouse. Ex. C, ¶15; Ex. D ¶ 9. Instead, dancers relied entirely upon tips from customers, which came from private dances, for their income. Id. In addition, Plaintiff Grove and the other dancers were required to share their tips with other non-service employees, such as disc jockeys, bouncers, and managers at the end of each shift. Ex. C ¶ 10; Ex. D ¶ 10. As a result of these policies, Plaintiff Grove and the other dancers did not receive minimum wage for all hours worked at Playhouse.

### III.    ARGUMENT

#### A. The Court May Issue Notice Upon a Modest Factual Showing that Similarly Situated Individuals Exists

Under the FLSA, a worker may bring an action either on an individual basis or on a collective basis on behalf of herself "and other employees similarly situated." 29 U.S.C. § 216(b). To provide other similarly situated employees with the opportunity to opt in, "the Court has discretion to facilitate the opt-in process and authorize court-supervised notice to potential opt-in plaintiffs." Frazier, 337 F.Supp.3d at 861 (citing Saleen v. Waste Mgmt., 649 F.Supp.2d 937, 939 (D. Minn. 2009). Notice is intended to establish the contours of the action and to further the broad remedial purpose of the FLSA. See Hoffman-LaRoche, 493 U.S. at 171 (discussing importance of early notice in collective actions in order to "ascertain[] the contours of the action at the outset").

"Courts in this Circuit typically engage in a two-stage analysis when a plaintiff seeks to certify a FLSA collective action pursuant to § 216(b)." Tegtmeier v. PJ Iowa, L.C., 208 F. Supp. 3d 1012, 1018 (S.D. Iowa 2016) (citing Putman, 276 F.R.D. at 269). "In the [conditional certification] stage, also known as the 'notice stage,' the Court considers at an early point in the litigation whether to conditionally certify the opt-in collective action. Tegtmeier, 208 F. Supp. 3d at 1018 (citing Robinson v. Tyson Foods, Inc., 254 F.R.D. 97, 99 (S.D. Iowa 2008)). "If the plaintiffs satisfy this first burden, the court conditionally certifies the class, and potential class members are given notice and the opportunity to opt-in. Littlefield v. Dealer Warranty Servs., LLC, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010) (citing Schleipfer v. Mitek Corp., 2007 WL 2485007, at *3 (E.D. Mo. Aug. 29, 2007)). "[A]t the second step of the process, the defendant may move, and the court may determine, to decertify the class." Perrin v. Papa John's Intern., Inc., 2011 WL 4089251, at *3 (E.D. Mo. Sept 14, 2011) (citing Kautsch v. Premier Communications, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007)). The decertification analysis occurs "after the close of discovery, on a fully developed record that permits the court to make a factual determination as to whether the members of the conditionally certified class are indeed similarly situated." Perrin, 2011 WL 4089251, at *3 (citing Davis v. NovaStar Mortg., Inc., 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005)).

To establish that conditional certification is appropriate, Plaintiff must provide "some factual basis from which the court can determine if similarly situated potential plaintiffs exist." Robinson, 254 F.R.D. at 99 (quoting Dietrich v. Liberty Square, L.L.C., 230 F.R.D. 574, 577 (N.D. Iowa 2005)). Plaintiff can meet this requirement "'by making a modest factual showing sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Fast v. Applebee's Int'l, Inc., 243 F.R.D. 360, 363 (W.D.

7

Mo. 2007) (quoting Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)); see also Bouaphakeo, 765 F.3d at 796. Plaintiff's evidentiary burden at this early stage is lenient; as a result, conditional certification is typically granted. Fast, 243 F.R.D. at 362–63.

Importantly, the Court does not evaluate the merits of the case as part of the conditional certification inquiry. See Andersen v. Wells Fargo Fin., Inc., 2012 WL 12871958, at *3 (S.D. Iowa Feb. 6, 2012 (quoting West v. Border Foods, Inc., 2006 WL 1892527, at *3 (D. Minn. June 12, 2006)) ("The Court need not 'make any findings of facts with respect to contradictory evidence presented by the parties nor does th[e] court need to make any credibility determinations with respect to the evidence presented'"); Pivonka v. Bd. of Cty. Comm'rs of Johnson Cty., Kansas, 2005 WL 1799208, *2 (D. Kan. 2005) (holding that disparate factual and employment settings are reviewed during "second stage" analysis, not during "notice stage"). Merits determinations are reserved for later in litigation, but in the meantime, potential opt-ins should be apprised of their right to join in this action before their claims expire. See Bouapheko v. Tyson Foods, Inc., 564 F.Supp.2d 870, 893 (N.D. Iowa 2008) ("[W]hether at the first step or second step in the § 216(b) collective action certification process, plaintiffs need not prove the merits of their claim.").

### B. The Court Should Authorize Notice because Plaintiff has Made a Sufficient Showing that Similarly Situated Collective Action Members Exist

The Plaintiff in this case has amply demonstrated that she and other exotic dancers who worked for Playhouse are "similarly situated" for purposes of conditional certification. A showing that members of the proposed collective are similar with respect their positions, job duties, and payment structure is sufficient to obtain conditional certification. See, e.g., Littlefield, 679 F. Supp. 2d at 1017 (granting conditional certification where Plaintiffs "declare[d] that they worked over forty hours a week, but were not paid overtime wages for this

work …performed the same task, and … were all compensated in the same manner"); Robinson, 254 F.R.D. at 102 ("The court finds that the plaintiffs have met their burden, at this stage, of demonstrating a "single decision, policy or plan," in that most production employees are paid on a "gang time" basis, wear some kind of PPE, and use knives in their work."); Fast, 243 F.R.D. at 364 ("Plaintiffs have submitted sufficient evidence to show that Applebees maintains and encourages a practice that results in tipped employees performing non-tip producing tasks for less than minimum wage."); Burch v. Qwest Commc'ns Int'l, Inc., 500 F. Supp. 2d 1181, 1190 (D. Minn. 2007) (conditional certification appropriate where "Plaintiffs have established a colorable basis that they are victims of a single, nationwide policy by Qwest to illegally withhold overtime pay."). Where the Plaintiff has provided "some factual basis from which the court can determine if similarly situated potential plaintiffs exist" (Campbell v. Amana Co., L.P., 2001 WL 34152094, at *2 (N.D. Iowa Jan. 4, 2001) (quoting Jackson v. New York Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995)), the lenient standard for conditional certification is met.

  Here, the declarations of Plaintiff and the opt-ins establish that all dancers working at Playhouse were uniformly classified as independent contractors, were not paid any wages by Playhouse, performed the same job duties, and were subject to the same rules and policies. See, e.g., Littlefield, 679 F. Supp. 2d at 1017 (citing Huang v. Gateway Hotel Holdings, 248 F.R.D. 225, 227 (E.D. Mo. 2008)) ("In a typical case, the court decides whether to conditionally certify a class based solely on the plaintiffs' affidavits."); Davis v. NovaStar Mortg., Inc., 408 F. Supp. 2d 811, 816 (W.D. Mo. 2005) ("Signed declarations provide appropriate support for [conditional certification] motions"). In sum, Plaintiff has made a sufficient showing that conditional certification is appropriate in this case.

### C. Plaintiff has Made a Sufficient Preliminary Showing that she is an Employee of Defendants as a Matter of Economic Reality

Defendants may argue that conditional certification should not be granted because the Plaintiff and other exotic dancers were independent contractors, but arguments that go to the merits are not germane at the conditional certification stage. Putman, 276 F.R.D. at 274 (S.D. Iowa 2011) ("[m]aking a determination, at this time, of whether the satellite installation technicians were independent contractors or employees pursuant to the 'economic realities' test, would . . . improperly delve into the merits of Plaintiffs' claim."); Kautsch, 504 F. Supp. 2d at 690 (W.D. Mo. 2007) (citing Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997)) ("at the notice stage, the Court does not reach the merits of Plaintiffs' claims."). What matters for purposes of conditional certification is that all exotic dancers who worked at Playhouse were subject to the same policy of misclassification and failure to pay minimum wage. Nevertheless, Plaintiff is able to demonstrate, even at this early stage, that she and other dancers were employees of Defendants as a matter of economic reality. More importantly, Plaintiff and other exotic dancers are similarly situated with regard to all six factors of the FLSA "economic realities" test.

FLSA's expansive definition of employment "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992). For purposes of the FLSA, "employees are those who as a matter of economic reality are dependent upon the business to which they render service." Bartels v. Birmingham, 332 U.S. 126, 130 (1947)."To determine whether an individual is an employee under the FLSA, the Eighth Circuit uses the "economic realities" test. Roeder v. Directv, Inc., 2017 WL 151401, at *9 (N.D. Iowa Jan. 13,

2017) (citing Ash v. Anderson Merchandisers, LLC, 799 F.3d 957, 961 (8th Cir. 2015)).  The economic realities test examines the following six factors:

> (1) the degree of control exercised by the employer over the worker;
> (2) the worker's opportunity for profit or loss;
> (3) the worker's investment in the business;
> (4) the degree of skill and independent initiative required to perform the work;
> (5) the permanence or duration of the working relationship; and
> (6) the extent to which the work is an integral part of the employer's business.

Rutherford Food Corp. v. McComb, 331 U.S. 722 (1947); Putman, 276 F.R.D. at 274. "No one factor is controlling and the court must base its decision on the totality of the circumstances." Roeder, 2017 WL 151401, at *9 (citing Rutherford Food, 331 U.S. at 728).

The misclassification of exotic dancers as "independent contractors" when they are actually employees is not unique to Playhouse.  Multiple courts around the country have been faced with cases in which strip clubs classify dancers as independent contractors. See, e.g., Reich v. Circle C. Invs., Inc., 998 F.2d 324 (5th Cir. 1993) (finding dancers are employees under the FLSA); McFeeley v. Jackson Street Entertainment, LLC, 47 F.Supp.3d 260 (D. Md. 2014); Hart, 967 F.Supp.2d at 901; Clincy v. Galardi South Enterprises, Inc., 808 F.Supp.2d 1326 (N.D. Ga. 2011); Harrell v. Diamond A Entertainment, Inc., 992 F.Supp. 1343 (M.D. Fla. 1997). Almost universally, the courts in these cases have found that these dancers were employees for purposes of the FLSA. Clincy, 808 F.Supp.2d at 1343 ("[S]everal courts have addressed the question of whether a nude dancer is an employee under the FLSA, and '[w]ithout exception, these courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage.'") (quoting Harrell, 992 F.Supp. at 1347-48). Similarly, in this case, Plaintiff and other exotic dancers are employees of Defendants within the meaning of the FLSA.

The declaration and supporting documents submitted by Plaintiff demonstrate that she and other exotic dancers were closely controlled in all aspects of their work, receiving

instructions from Defendants on such things as the time and duration of the shifts they worked, their appearance, and the proper manner in which they were to interact with patrons. The dancers had no customers of their own but rather depended upon being permitted to work shifts at the Defendants' club for their livelihood. Playhouse supplied its facilities, provided advertising, and invested its own resources into stocking beverages and providing music for patrons. Plaintiff Grove and the other dancers were required to report to work for a minimum of three shifts per week, with each shift lasting up to 11 hours.  During these shifts, the dancers were required to perform "sets" of dances on stage during periodic intervals. Prior to being allowed to work at the club, Plaintiff Grove and other dancers were required to audition by performing at "Amateur Night". Many dancers worked for Playhouse for several months, and their services—erotic entertainment—formed an integral part of the Defendants' strip club business.  When the dancers reported for their mandatory shifts, the Defendants required them to comply with any rules and requirements regarding their appearance and attire that they chose to impose in its own. Dancers risked discipline and fees for being late for a shift or not reporting to a scheduled shift, or leaving a shift early. Finally, the Defendants required dancers to tip out other non-service employees, including disc jockeys and security staff. In sum, Plaintiff and the other exotic dancers working at Playhouse were employees of Defendants as a matter of economic reality.

### D.  Plaintiff's Proposed Notice is Proper

Congress' purpose in authorizing § 216(b) collective actions was to avoid multiple lawsuits where numerous employees have been harmed by a common violation of the FLSA. See Hoffman-La Roche, 493 U.S. at 170 (describing benefits of collective action under the analogous Age Discrimination in Employment Act). As the Supreme Court has noted, "[t]hese benefits, however, depend on employees receiving accurate and timely notice concerning the

pendency of the collective action, so that they can make informed decisions about whether to participate." Id. Court-authorized notice also prevents "misleading communication" to class members about the nature of the pending case. Id. at 172.

In the instant case, Plaintiff's proposal for court-approved Notice to potential opt-ins (Exhibit A) meets the timeliness, accuracy and informational requirements established by the Supreme Court in Hoffman-La Roche. The proposed Notice describes the lawsuit, informs individuals who have worked as exotic dancers at Playhouse and were classified as independent contractors of their opportunity to "opt-in," instructs them how to opt-in, and notifies them of the effect of their decision to opt-in. The proposed notice is also appropriate in its scope: a three-year notice period is proper at the conditional certification stage.[4]

---

[4] See Littlefield, 679 F. Supp. 2d at 1019 (noting that judicial economy is served by conditionally certifying a larger collective and applying three-year statute of limitations); Burch v. Qwest Commc'ns. Int'l, Inc., 500 F. Supp. 2d 1181, 1191 (D. Minn. 2007) ("Exclusion of potential plaintiffs based on application of the two-year statute of limitations would be premature at this juncture."); see also Benion v. Lecom, Incorporated, 2016 WL 2801562 at *11 (E.D. Mich.) May 13, 2016) (quoting Colley v. Scherzinger Corp., 2016 WL 1388853, *4 (S.D. Ohio Apr. 6, 2016)) ("It is appropriate to allow a three-year look-back period in the notice where '[t]he absence of willful conduct is not established as a matter of law by the pleadings.'").

Plaintiff therefore seeks leave to send the Notice and Opt-In Consent Form, attached as Exhibits A and B, respectively, by First Class Mail, e-mail[5] and text message[6] to all current and former exotic dancers who have worked at Playhouse within the past three years and were classified as independent contractors, and that the notice also be posted on Defendant's premises.[7] This request is consistent with established practice under the FLSA. See, e.g.,

---

[5] E-mail is increasingly recognized by courts as an effective method for providing notice. See, e.g., Syed v. M-I, L.L.C., 2014 WL 6685966, at *8 (E.D. Cal. Nov. 26, 2014) (finding that "email is an increasingly important means of contact" and ordering that notice be sent via hardcopy mail and email to all potential opt-ins); Guy v. Casal Inst. of Nevada, LLC, 2014 WL 1899006, at *7 (D. Nev. May 12, 2014), ("email is an efficient, reasonable, and low cost supplemental form of notice"); In re Deloitte & Touche, LLP Overtime Litig., 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (granting request for notice by e-mail) ("communication through email is the norm"); see also Vasto, 2016 WL 2658172 at *16 (granting request for notice by e-mail); Snively v. Peak Pressure Control, LLC, 174 F. Supp. 3d 953, 962 (W.D. Tex. 2016) (same); Butler v. DirectSAT USA, LLC, 876 F. Supp. 2d, 560, 575 (D. Md. 2012) (same); Beasley v. Custom Communications, Inc., 2016 WL 5468255, at *6 (E.D. N.C. Sept. 28, 2016) (granting request for e-mail addresses).

[6] This request is especially appropriate in light of the transient nature of many dancers, and has been approved by a number of courts in recent years. See, e.g., Desio v. Russell Road Food and Beverage, LLC, 2017 WL 4349220, at *5 (D. Nev. Sept. 29, 2017) ("The Court . . . grants Plaintiff's request to … send text message notifications. Specifically, the Court finds in its discretion that due to the transient nature of dancers, contact via text messages does not seem "unnecessary and redundant.") (internal citations omitted); Avendano et al. v. Averus, Inc. et al., No. 14-cv-01614, (D. Colo. Oct. 25, 2016) ("Given the undisputed transient nature of the class and Plaintiff's assertion that text messaging is the most reliable form of communication, the Court finds that notification by text message is likely to be a viable and efficient means of notifying many prospective members of this collective action."); Vasto v. Credico (USA) LLC, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) ("[C]ourts in this District have permitted email and text message distribution where, as here, the nature of the employer's business facilitated a high turnover rate among employees."); Eley v. Stadium Group, LLC, 2015 WL 5611331, *3 (D.D.C. Sept. 22, 2015) (approving distribution of FLSA collective action notices via mail, email and text message, holding that such means of distribution are "in line with what has been approved in other FLSA collective actions.") (citing Bhumithanarn v. 22 Noodle Market Corp., 2015 WL 4240985, *5 (S.D.N.Y. July 13, 2015) (holding that in a case involving a "transient" population, "notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action.")).

[7] See Putnam, 276 F.R.D. at 277-78 (S.D. Iowa 2011) (noting that "courts routinely approve requests to post notice in common areas or on employee bulletin boards, even if there is an alternative form of notice") (collecting cases); Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) ("Pret stated at argument that posting in the Pret stores will be

Hoffman-LaRoche, 493 U.S. at 170; see also Chin v. Tile Shop, LLC, 57 F. Supp. 3d 1075, 1095 (D. Minn. 2014).

To that end, Plaintiff requests that the Court order the Defendants, within 14 days of its Order granting conditional certification, to produce the names, last known mailing and email addresses, and telephone numbers for all collective action members. Courts granting conditional certification routinely order the defendant to produce this information to facilitate notice to the collective.[8]

Once the Defendants have produced collective action members' names and contact information, and notices have been mailed, collective action members should have a 90-day window to return a signed consent form. "Notice periods may vary, but numerous courts around the country have authorized ninety-day opt-in periods for collective actions." Butler, 876 F.

---

unnecessarily disruptive and will start a conversation among employees. That argument is unpersuasive. A purpose of notice *is* to start a conversation among employees, so as to ensure that they are notified about potential violations of the FLSA and meaningfully able to vindicate their statutory rights."); Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.").

[8] Harris v. Chipotle Mexican Grill, Inc., 49 F. Supp. 3d 564, 582 (D. Minn. 2014) (ordering defendant to provide name, last known home or residence address, and personal email address for each potential opt-in plaintiff); Custom Commc'ns, Inc, 2016 WL 5468255, at *6 (ordering production of names, dates of employment, e-mail addresses, telephone numbers, and last-known addresses); Curtis v. Scholarship Storage Inc., 2015 WL 1241365, at *5 (D. Me. Mar. 18, 2015) (granting "Plaintiffs' request for the names, addresses, telephone numbers, and email addresses of all potential collective action members."); Poreda v. Boise Cascade, L.L.C., 532 F. Supp. 2d 232, 242 (D. Mass. 2008) ("Defendant shall provide Plaintiff with the names, addresses, email addresses and telephone numbers of all employees who potentially could be members of the FLSA Class electronically within twenty days of this order."); Vaughn v. Rescue Rangers, LLC, 3:15-cv-0056-JAG, Dkt. 30 (Order), p. 1 (E.D. Va. Jan. 13, 2016) (ordering Defendants to produce contact information, including e-mail addresses, for potential plaintiffs); Gerges v. Enter. Sys. Software, LLC, No. 3:15-cv-01816-JZ, Dkt, 19, p. 2 (Order approving Stipulation for Conditional Certification) (N.D. Ohio Oct. 27, 2015) (Defendants are to provide spreadsheet with contact information, including e-mails, for potential plaintiffs).

Supp. 2d at 575.[9] A longer notice period is especially warranted here where turnover among workers is high, leading to delays in reaching every class member. See, e.g., Murray, 2017 WL 514323, at *6 ("The Court finds that a 90-day opt-in period is sufficient and will better serve the interests of efficiently facilitating notice without further delaying this litigation because of the transient nature of exotic dancers and the lack of available contact information.").

The Court should also authorize Plaintiff to mail, email, or text a reminder to all collective action members who received the notice but have not yet responded to opt in to this matter within forty-five (45) days of the first issuance of the notice. Courts regularly authorize reminder notices to increase the chance that workers will be informed of their rights. See Morris v. Lettire Const., Corp., 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate."); Sanchez v. Sephora USA, Inc., 2012 WL 2945753, *6 (N.D. Cal. July 18, 2012) ("[C]ourts have recognized that a second notice or reminder is appropriate in an FLSA action since the individual is not part of the class unless he or she opts-in.") (internal citations omitted). A reminder notice is particularly appropriate "in an FLSA action since the individual is not part of the class unless he or she opts-

---

[9] See also Benion, 2016 WL 2801562 at *11 (citing Hoffmann-La Roche, 493 U.S. at 170) ("One of the purposes of judicially supervised notice is to protect the claims of potential plaintiffs for unpaid overtime compensation . . . That interest, of course, must be balanced with expeditious and prudent case management. The 90-day notice period proposed by the plaintiffs properly strikes that balance."); Club Cabaret, Inc., 2015 WL 6444793 at *6 ("Courts routinely approve a 90–day opt-in period, and the Defendant provides no good reasons not to do so here."); Harris v. Performance Transp., LLC, 2015 WL 1257404, at *6 (M.D. Fla. Mar. 18, 2015) ("courts routinely grant ninety-day opt-in periods."); Wlotkowski v. Michigan Bell Tel. Co., 267 F.R.D. 213, 220 (E.D. Mich. 2010) (approving a 90-day notice period); Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 68–69 (E.D. Pa. 2009) (same); Lima v. Int'l Catastrophe Sols., Inc., 493 F. Supp. 2d 793, 804 (E.D. La. 2007) ("The Court believes that an opt-in period of ninety days is adequate.").

in." Sephora, 2012 WL 2945753, at *6 (citation omitted). Plaintiff will bear the cost of notice, as well as the reminder mailing, and it will not affect the end date of the notice period.

## IV.   CONCLUSION

Plaintiff has amply shown that conditional certification and the issuance of notice is appropriate at this stage of the case. Accordingly, Plaintiff respectfully requests that the Court enter the Proposed Order attached as Ex. E and:

(1) Conditionally certify this action as a collective action under 29 U.S.C. §216(b);

(2) Order that Notice be issued to all exotic dancers who have worked at Playhouse during the last three years and were classified as independent contractors by first class mail, e-mail, and text message and by visibly posting the Notice on the premises of Playhouse in the form set forth in Exhibit A; and

(3) Order that, within 14 days of the issuance of its Order, Defendants produce a list of the names, last-known mailing and e-mail addresses, and telephone numbers for all individuals who currently work and/or previously worked for Playhouse as exotic dancers at any time in the last three years and were classified as independent contractors.

DATED:   October 1, 2020            Respectfully submitted,

Andrea Grove, on behalf of herself
and all others similarly situated,

By her attorneys,


/s/ Olena Savytska
Harold Lichten (*pro hac vice*)
Olena Savytska (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com

>Nate Willems
>Rush & Nicholson P.L.C.
>P.O. Box 637
>Cedar Rapids, IA 52406
>Tel: 319-363-5209
>Fax: 319-363-6664
>Email: nate@rushnicholson.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1 day of October, 2020, a copy of the foregoing motion and all exhibits was filed electronically through the Court's CM/ECF system, which will send notice of this filing to all counsel of record.

>/s/ Olena Savytska
>Olena Savytska, Esq.