**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

---

ANDREA GROVE, individually and on behalf
of all others similarly situated,

Plaintiff,

v.

BEER BARN CORPORATION, R & L B
CORPORATION d/b/a IOWA PLAYHOUSE,
RONALD BERGERON MICHAEL
BERGERON, AND LYNDA BERGERON,

Defendants.

CA NO. 1:20-CV-00027-SMR-CFB

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS OR ALTERNATIVELY TO STAY PENDING ARBITRATION**

## I.   INTRODUCTION

Four months after this case was filed, Defendants have submitted a Motion to Dismiss or Alternatively to Stay Pending Arbitration (Dkt. 19). In support of their motion, Defendants include a three-page memorandum, and one independent contractor agreement signed by Plaintiff Grove.[1] The arbitration provision, contained at the very end of this agreement, states that "[a]ny dispute that arises from this contract or from Entertainer performing at Center premises that cannot be settled through good faith negotiation shall be settled by arbitration, **under arbitration laws for the state of Iowa**." Dkt. 21.1, p. 3 (emphasis added). Defendants' bid to dismiss or stay this case pending arbitration must fail for several reasons.

---

[1] Notably, the agreement is NOT signed by any of the Defendants. Dkt. 21.1, p. 3. It has a blank signature line for R & L B Corporation.

1

First, Plaintiff's claims in this case are not subject to arbitration under Iowa law. The arbitration provision in this case makes clear that it is governed only by "the arbitration laws of the state of Iowa." The Iowa statute governing arbitration, in turn, makes clear that contracts "between employers and employees" are **not** subject to arbitration. See Iowa Code 2018, §679A.1(2); see also Pennsylvania Life Ins. Co. v. Simoni, 641 N.W.2d 807, 811 (Iowa 2002).

Plaintiff's claims in this case center on her claim of misclassification – that is, Plaintiff's central assertion is that she was an employee of Defendants for purposes of federal and state law. And Plaintiff is likely to prevail on her misclassification claim – multiple courts around the country have repeatedly found exotic dancers to be employees both under the FLSA and under state law.[2] For these reasons, this case involves a contract between an employee and employer, and is not subject to arbitration under Iowa law. At the very least this is a threshold issue which this Court would have to decide first.

Second, as noted above, Defendants produce only an agreement for Ms. Grove. Defendants fail to produce arbitration agreements signed by the opt-ins in this case.[3] It is Defendants' burden to show that valid arbitration agreements exist for each of these opt-ins, and

---

[2] See, e.g., Reich v. Circle C. Invs., Inc., 998 F.2d 324 (5th Cir. 1993) (finding dancers are employees under the FLSA); McFeeley v. Jackson Street Entertainment, LLC, 47 F.Supp.3d 260 (D. Md. 2014) (same); Hart v. Rick's Cabaret Intern., Inc., 967 F.Supp.2d 901 (S.D.N.Y. Sept. 10, 2013); Clincy v. Galardi South Enterprises, Inc., 808 F.Supp.2d 1326, 1343 (N.D. Ga. 2011) (quoting Harrell v. Diamond A Entertainment, Inc., 992 F.Supp. 1343, 1347-48 (M.D. Fla. 1997)) ("[S]everal courts have addressed the question of whether a nude dancer is an employee under the FLSA, and '[w]ithout exception, these courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage.'").

[3] To date, four individuals in addition to Plaintiff have filed opt-in consent forms to join this case. See Dkts. 6, 7, 14, 18.

Defendants have failed to make this showing. For this reason, the opt-ins' claims are not subject to arbitration.[4]

A number of other considerations counsel against enforcement of the arbitration provision. First, Defendants have delayed four months in moving to compel arbitration since this case was filed, and through this delay, have waived their right to compel arbitration.[5] In addition, even if the arbitration provision is found to apply to the claims in this case, it is so permeated with procedural and substantive unconscionability as to be unenforceable. Plaintiff was presented with the agreement containing this arbitration provision a few minutes before she had to start performing at Playhouse. She did not have time to review the document, and did not receive an explanation of this document, nor of the arbitration provision, which appears at the end of the last page of the agreement. Plaintiff had to sign this agreement in order to perform at Playhouse. Moreover, even if Plaintiff had a chance to review the arbitration provision, it is troublingly silent as to the process and venue for the arbitration proceeding, and the costs or arbitration, which means that Plaintiff could likely be forced to shoulder thousands of dollars in arbitration fees and costs in order to vindicate her wage and hour claims. The contents of the arbitration provision therefore render it substantively unconscionable. For all of these reasons, Defendants' Motion to Dismiss must be denied in its entirety.

In addition, Plaintiff in this case has filed a Motion for Conditional Certification, which has not been opposed, and thus should be granted, particularly since there is no evidence of

---

[4] If Plaintiff needs to amend her Complaint to add one or more of the opt-ins as named plaintiffs, she will do so.

[5] See Lewallen v. Green Tree Servicing, LLC, 487 F.3d 1085, 1090 (8th Cir. 2007) (quoting Ritzel Commun., Inc. v. Mid-Am. Cellular Tel. Co., 989 F.2d 966, 969 (8th Cir. 1993)) ("A party may be found to have waived its right to arbitration if it: '(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts.'" )

arbitration agreements signed by the opt-ins in this case, and thus this case cannot be dismissed

in any event. Instead, the proper course of action for the Court is to grant Plaintiffs' Motion for

Conditional Certification and allow notice to issue to similarly situated dancers. The question of

arbitration is then properly considered at the second, or decertification, stage. See Grove v.

Meltech, No. 20-cv-00193, Dkt. 85, p. 8 (Order granting Motion for Conditional Certification)

(D. Neb. Dec. 3, 2020) (collecting cases) ("district courts in this circuit…have granted

conditional certification providing notice to potential collective members and deferred the

merits-based question of whether the arbitration agreements are valid and enforceable to the

second stage."); Haworth v. New Prime, Inc., 448 F.Supp.3d 1060, 1066 (W.D. Mo. 2020);

Astarita v. Menard, Inc., 2020 WL 951509 at *3 (W.D. Mo. Feb. 6, 2020). The Court should

deny Defendants' request for dismissal or a stay, or, at the very least, defer a ruling on the

motion until the decertification stage.

## II.   ARGUMENT

### A.  Plaintiff's Claims are Not Subject to Arbitration under Iowa Law

As noted above, the arbitration provision in this case is clearly limited to Iowa law - it states

that "arbitration laws for the state of Iowa," and not the FAA, govern this matter. Dkt. 21.1, p. 3.[6]

---

[6] In Rittmann v. Amazon, the Ninth Circuit recently considered the reverse of this scenario – the arbitration provision in that case stated that it was governed by the FAA. Having found that plaintiffs were exempt from the FAA as transportation workers, the Ninth Circuit declined Defendants' invitation to apply Washington state law to analyze the arbitration agreement, noting that "Amazon cites no authority that would allow us to conclude that the presumption in favor of local law overcomes express contractual language that precludes its application." Rittmann v. Amazon.com, Inc., 971 F.3d 904, 921 (9th Cir. 2020). And in Sutcliffe v. Mercy Clinics, Inc., 856 N.W.2d 382 (Iowa App. 2014), where the Court applied the FAA in lieu of Iowa law, the arbitration provision did not specifically provide that Iowa law applied. Here, where the arbitration provision clearly selects Iowa arbitration law, the proper course is to analyze Defendants' bid to compel arbitration under the Iowa Arbitration Act.

Iowa's statute governing arbitration provides that "[a] provision in a written contract to submit to arbitration a future controversy arising between the parties is valid, enforceable, and irrevocable unless grounds exist at law or in equity for the revocation of the contract. This subsection **shall not apply to** . . .**a contract between employers and employees**." Iowa Code 2018, §679A.1(2) (emphasis added).

In a case addressing the applicability of the Iowa Arbitration Act's exemption for tort claims, the Supreme Court of Iowa explained, "[o]ur rules of statutory interpretation are well established. 'When the text of a statute is plain and its meaning clear, the court should not search for a meaning beyond the express terms of the statute....'" Wesley Ret. Services, Inc. v. Hansen Lind Meyer, Inc., 594 N.W.2d 22, 25 (Iowa 1999) (citing Henriksen v. Younglove Constr., 540 N.W.2d 254, 258 (Iowa 1995)). "The General Assembly plainly and clearly stated its intent in this statute; tort claims are *not* subject to arbitration. As the legislature explicitly stated, this is so regardless of whether the tort claims involve a breach of contract." Id. at 26. The court went on to examine the Iowa legislature's purpose in drafting the Iowa Arbitration Act and its exemptions: "[t]he legislature's intent as evidenced by section 679A.1 is not solely to facilitate the use of arbitration as an alternative to sometimes expensive and time-consuming litigation . . . If that had been the sole purpose of chapter 679A, the legislature would not have specifically provided for exceptions to the enforceability of arbitration agreements, as it did in section 679A.1(2)." Id. "The fact that it did provide for an exception for tort claims evidences an intent to preserve litigants' traditional right to have their claims resolved in a court of law." Id. This reasoning likewise applies to the exemption contained in the Iowa Arbitration Act for contracts between employers and employees.

In this case, Plaintiff's central claim is that she was, for purposes of the FLSA and Iowa state law, an employee of Defendants. Thus, Plaintiff's claims in this case are premised on an employee-employer relationship, and are not subject to arbitration under Iowa law.[7] While Plaintiff was classified by Defendants as an "independent contractor", New Prime and other cases provide ample authority for considering Plaintiff's contract one of employment.[8] Moreover, Plaintiff is likely to prevail on her claims of misclassification. The misclassification of exotic dancers as "independent contractors" when they are actually employees is a widespread practice, and multiple courts around the country have been faced with cases in which strip clubs classify dancers as independent contractors. In nearly all of these cases, courts have found that the dancers are employees under the FLSA and/or state law. See, e.g., Foster v. Gold & Silver Private Club, Inc., 2015 WL 8489998, *5 (W.D. Va. Dec. 9, 2015) (granting summary judgment to exotic dancers on their status as employees under the FLSA, noting that "courts have consistently found exotic dancers to be employees under the FLSA....") (citing Thompson v. Linda And A., Inc., 779 F.Supp.2d 139, 151 (D.D.C. Apr. 29, 2011) (collecting cases)); Hart, 2013 WL 4822199 at *5 (quoting Harrell, 992 F.Supp. at 1348) (internal quotation omitted)

---

[7] While the FAA "preempts all state laws that reflect a policy disfavoring arbitration and which are designed specifically to limit arbitration" (Faber, 367 F.3d at 1052), the arbitration provision at issue in this case makes no mention of the FAA, and unequivocally states that it is subject to Iowa law. See, e.g., Heaberlin Farms, Inc. v. IFG Ins. Co., 641 N.W.2d 816, 819 (Iowa 2002) ("**if** the federal act is applicable, it preempts the Iowa statute") (emphasis added). As noted above, the language of the arbitration provision makes unequivocally clear that it is subject to Iowa law, not the FAA.

[8] New Prime Inc. v. Oliveira, 139 S. Ct. 532, 544 (2019) ("contracts of employment" encompass independent contractor agreements); Simoni, 641 N.W.2d at 813 (quoting Harvey v. Care Initiatives, Inc., 634 N.W.2d 681, 684 n. 2 (Iowa 2001)) ("whether a person is an independent contractor or an employee is a 'factual determination based on the nature of the working relationship and many other circumstances, not necessarily on any label used to identify the parties in the contract.'").

("[n]early without exception, these courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage.").[9] Thus, Plaintiff's claims in this case are within the employer-employee exemption contained within Iowa's arbitration statute, and are not subject to arbitration. At least this is a threshold question the Court needs to decide first.[10] See, e.g., Simoni, 641 N.W.2d at 813 (affirming denial of request to compel arbitration) ("Because a factual dispute exists, we cannot decide at the pleading stage whether the agreements between the parties are ones between an employer and an employee so as to render the arbitration provision unenforceable.").

### B. Defendants Have Failed to Establish the Existence of Valid Arbitration Agreements for the Opt-ins

The first step in the Court's analysis of the Defendants' Motion to Dismiss is to determine whether an agreement to arbitrate exists. After a motion to compel arbitration is filed, "if the opposing party denies the existence of a valid and enforceable agreement to arbitrate, the district court shall proceed to the determination of the issue and shall order arbitration if a valid

---

[9] See also McFeeley, 2012 WL 5928902, at *5 (strip club that managed its dancers, handled all advertising, and required its dancers to sign-in, pay a house fee, and impose certain charges on the club's customers for dances, were the dancers' employer under the FLSA); Reich v. Circle C. Invest., Inc., 998 F.2d 324, 329 (5th Cir.1993); Butler v. PP & G, Inc., CIV.A. WMN-13-430, 2013 WL 5964476 (D. Md. Nov. 7, 2013); Thornton v. Crazy Horse, Inc., No. 3:06–CV–00251–TMB, 2012 WL 2175753 (D. Alaska June 14, 2012); Clincy, 808 F.Supp.2d at 1343; Thompson v. Linda and A. Inc., 779 F.Supp.2d 139, 151 (D.D.C. 2011); Morse v. Mer Corp., 2010 WL 2346334, at *6 (S.D. Ind. June 4, 2010); Reich v. Priba Corp., 890 F.Supp. 586, 594 (N.D. Tex. 1995); Martin v. Priba Corp., 1992 WL 486911, at *5 (N.D.Tex. Nov. 6 1992); Doe v. Cin–Lan, Inc., 2008 WL 4960170 (E.D. Mich. Nov. 20, 2008) (in assessing motion for preliminary injunction, finding that dancer was substantially likely to succeed on claim that she is an employee under FLSA); Jeffcoat v. Alaska Dep't of Labor, 732 P.2d 1073 (Alaska 1987) (finding dancers to be employees under state labor laws modeled on FLSA).

[10] See Singh v. Uber Techs. Inc., 939 F.3d 210, 215 (3d Cir. 2019) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, (2002); Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746, 756 (3d Cir. 2016)) ("To the extent that a particular ground implicates the threshold question of whether the parties are bound by an agreement to arbitrate, it is referred to as a gateway question of arbitrability and is typically resolved in court.").

and enforceable agreement is found to exist. If no such agreement exists, the court shall deny the

application." Iowa Code 2018, §679A.1. On this preliminary issue, Defendants come up short.

Defendants have produced only an arbitration agreement signed by Ms. Grove, and have

produced no arbitration agreements for any of the four opt-ins.[11] For this reason alone, the opt-

ins' claims may not be dismissed in favor of arbitration.

## C.  Defendants have Waived their Right to Seek Arbitration

Defendants have waived their right to seek to compel arbitration by waiting four months to

seek arbitration. Waiver is found where a party "(1) knew of its existing right to arbitration;

(2) acted inconsistently with that right; and (3) prejudiced the other party through its

inconsistent actions." <u>Dumont v. Saskatchewan Govt. Ins. (SGI)</u>, 258 F.3d 880, 886 (8th Cir.

2001) (citing <u>Ritzel</u>, 989 F.2d at 969).

Here, Plaintiff filed her Complaint in August. Since then, Defendants have had ample

opportunity to raise the issue of arbitration. However, they filed Answers in October 2020.

Defendants did not raise the issue of arbitration in response to Plaintiff's Motion for

Conditional Certification (Dkt. 8), or in response to Plaintiff's Motion to Amend the

Complaint (Dkt. 13). Defendants' Motion to Dismiss comes four months after the Complaint

is filed, and is a belated attempt to invoke arbitration. "A litigant may not compel arbitration

when its use of the courts is 'clearly inconsistent with [its] later claim that the parties were

obligated to settle their differences by arbitration[.]'" <u>Stark v. Molod Spitz DeSantis & Stark,</u>

---

[11] See, e.g., <u>Adad v. Alta Colleges Inc.</u>, 2006 WL 8437382, at *1 (N.D. Tex. June 5, 2006)
("Because Defendants have failed to establish the existence of arbitration agreements for twenty
of the Plaintiffs, Defendants' motion to compel arbitration is **DENIED** as to those Plaintiffs.");
<u>Ortega v. Spearmint Rhino</u>, C.A. No. 5:17-cv-00206-JGB-KK, Dkt. 83, p. 4, n. 2 (C.D. Cal. May
15, 2019) (denying defendants' motion to compel arbitration as to the opt-in plaintiffs where the
motion "did not merely omit documents in support of compelling the arbitration of Opt-in
Plaintiffs' claims, it also omitted any mention of the Opt-in Plaintiffs.").

P.C., 876 N.E.2d 903 (N.Y. 2007) (quoting <u>Flores v Lower E. Side Serv. Ctr., Inc.</u>, 4 NY3d 363, 372 (2005)). Here, Defendants were content to allow this lawsuit to proceed in Court, filing two separate Answers (Dkts. 11, 12) and did not at any point raise the issue of arbitration.

In similar scenarios, courts have found that defendants who had pursued litigation had given up their right to seek arbitration. In <u>Hooper</u>, the court explained that defendant had waived its right to arbitration because its "motion to dismiss was extensive and exhaustive, and substantially invoked the litigation machinery." <u>Hooper v. Adv. Am., Cash Adv. Centers of Missouri, Inc.</u>, 589 F.3d 917, 921 (8th Cir. 2009); <u>see</u> <u>also</u> <u>Kelly v. Golden</u>, 352 F.3d 344, 349–50 (8th Cir.2003) (party asserting the right to arbitration had waived its right where it had "consistently encouraged the district court to resolve the entire dispute"); <u>Ritzel</u>, 989 F.2d at 969 (motion to dismiss for failure to state a claim "represent[ed] a substantial, active invocation of the litigation process" and supported a finding of waiver). In <u>Joba Construction Co. v. Monroe County Drain Commissioner</u>, 150 Mich. App. 173, 388 N.W.2d 251 (1986), the court concluded that the party seeking arbitration had waived the right to arbitration by its conduct because the party did not raise arbitration as a defense and was involved in discovery. Here, Defendants have filed Answers, and have not raised the issue of arbitration in response to Plaintiff's Motion for Conditional Certification or her Motion to Amend.

Defendants' actions have prejudiced, and continue to prejudice, Plaintiff and collective action members in this case. Plaintiff's Motion for Conditional Certification, filed on October 1, 2020, is currently pending. A ruling on this Motion may be delayed by several additional weeks while the Court takes briefing on Defendants' Motion to Dismiss. Had Defendants wished to raise the issue of arbitration, they should have done so in short order following

Case 1:20-cv-00027-SMR-SHL   Document 22   Filed 12/17/20   Page 10 of 16

Plaintiff's filing of her Motion for Conditional Certification. As things stand, Defendants'

Motion to Dismiss is a delay tactic, which will cause collective action members in this case

to lose out on a portion of their claims against Defendants.[12] Due to their participation in the

litigation process, and failure to raise the issue of arbitration over the past four months,

Defendants have waived their right to seek arbitration.

### D.  The Arbitration Agreement is Procedurally and Substantively Unconscionable

Even if the Court determines that Defendants are still permitted to seek arbitration, the

arbitration agreements at issue are procedurally and substantively unconscionable and cannot be

enforced. Arbitration provisions are typically enforceable, unless the agreement is found to be

unconscionable. See Brondyke v. Bridgepoint Educ., Inc., 985 F. Supp. 2d at 1090 (S.D. Iowa

2013). "Generally, when deciding whether an arbitration provision is unconscionable, courts

apply ordinary state-law principles governing the formation of contracts." Brondyke, 985 F.

Supp. 2d at 1096 (quoting Pro Tech Indus., 377 F.3d 868, 872 (8th Cir. 2004)). "The Iowa

Supreme Court has established that we should analyze the following factors of

unconscionability: (1) assent; (2) unfair surprise; (3) notice; (4) disparity of bargaining power;

and (5) substantive unfairness." Faber, 367 F.3d at 1053 (citing Home Fed. Sav. & Loan Ass'n v.

Campney, 357 N.W.2d 613, 618 (Iowa 1984)) (stating "that a court considering a claim of

unconscionability should examine the factors of assent, unfair surprise, notice, disparity of

bargaining power, and substantive unfairness")). "The ultimate conclusion of whether a

---

[12] Until the Court rules on Plaintiff's Motion for Conditional Certification and allows notice to issue to collective actions members, the statute of limitations on these individuals' claims will continue to run. See 29 U.S.C. § 256(b); Putman v. Galaxy 1 Mktg., Inc., 276 F.R.D. 264, 275 (S.D. Iowa 2011); 29 U.S.C. § 257.

provision is unconscionable is to be made 'in view of all the circumstances.'" Faber, 367 F.3d at

1053 (quoting C & J Fertilizer, Inc. v. Allied Mut. Ins. Co., 227 N.W.2d 169, 181 (Iowa 1975)).

    With regard to the notice, assent and unfair surprise factors, the arbitration agreement in this

case falls short. Plaintiff received the agreement prior to the beginning of her work shift at

Playhouse, so she had only a few minutes to sign it, and no meaningful opportunity to review the

arbitration provision, contained at the very bottom of the third page of the agreement. [13] See

Grove Declaration, attached hereto as Exhibit 1. Playhouse offered Plaintiff no explanation of

the contract, and did not mention the arbitration provision. Id. Nor did Plaintiff get a copy of the

contract after she signed it.  However, even if the Plaintiff had been given a chance to review the

arbitration provision, or obtain a copy of the agreement, she would not be able to ascertain

exactly what she was agreeing to. The arbitration provision offers no detail about the process to

be followed for the arbitration proceeding, the forum to be used for arbitration, or the allocation

of fees and costs. See Dkt. 21.1, p. 3; contrast Brondyke, 985 F. Supp. 2d at 1097 ("Bridgepoint

agreed to arbitrate its claims against Brondyke, and it set forth specific procedures and the scope

of arbitrable claims to ensure clarity for employees who had grievances against the company.").

Finally, unlike in Brondyke, Defendants in this case cannot show that *any of them* agreed to

arbitration – the signature line for R & LB Corporation, which operates Playhouse, is blank. See

Exhibit 21.1, p. 3.

---

[13] See, e.g., Zaborowski v. MHN Govt. Services, Inc., 936 F. Supp. 2d 1145, 1152 (N.D. Cal. 2013), aff'd, 601 Fed. Appx. 461 (9th Cir. 2014) (unpublished) (finding arbitration agreement unconscionable where "the arbitration clause appears in paragraph twenty of twenty-three paragraphs. It is not set apart from the rest of the agreement in any way, such as highlighting or outlining; the signature line is on the following page, and it does not require a separate signature."); Lau v. Mercedes-Benz USA, LLC, 2012 WL 370557, at *8 (N.D. Cal. Jan. 31, 2012) ("he location of an arbitration clause on the back of a dense pre-printed form where the purchaser is not required to sign does relatively little to notify the consumer that such clause exists.").

The arbitration provision at issue in this case also demonstrates a disparity in bargaining power. Plaintiff had no choice but to sign the independent contractor agreement containing the arbitration provision in order to work for Defendants – if she declined to sign, she would not be able to work at Iowa Playhouse. <u>See</u> Grove Decl., Ex. 1. She received no explanation of the agreement itself, nor any explanation of the arbitration provision, and she was not provided with a copy of the agreement upon signing it. <u>Id.</u> Plaintiff, who works as an exotic dancer, is not a highly educated individual, and the circumstances under which she signed the agreement indicate a significant disparity in bargaining power. <u>Id.</u>

In similar situations, courts have found arbitration agreements to be procedurally unconscionable. <u>See</u>, <u>e.g.</u>, <u>Hollins</u>, 479 F. Supp. 2d at 1107 (D. Neb. 2007) (finding plaintiff "is not a sophisticated businessman with any kind of commercial background," whose "ignorance and inexperience with contract negotiation," and the format of defendants "take it or leave it" agreement render arbitration agreement procedurally unconscionable); <u>Cullinane v. Beverly Enterprises-Nebraska, Inc.</u>, 912 N.W.2d 774, 794 (Neb. 2018) (finding an arbitration agreement to be unenforceable where an agent of defendant made a representation that the ADR Agreement had to be signed as a condition of nursing home admission, agreement was represented as "standard forms" and the plaintiffs had no opportunity to review the agreement before signing.).

The arbitration agreement in this case is also substantively unconscionable because it vitiates the Plaintiff's rights to pursue her statutory claims. The agreement is, on its face, silent as to costs. It is likely that Defendants will take the position that arbitration costs will be split 50-50. Thus, if compelled to arbitration, Plaintiff would be faced with the prospect of paying thousands of dollars in arbitration fees if they choose to move forward with their wage claims.

A fee-splitting arrangement may be unconscionable if information specific to the circumstances indicates that fees are cost-prohibitive and preclude the vindication of statutory rights in an arbitral forum. Faber, 367 F.3d at 1053 (citing Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000); Dobbins v. Hawk's Enterprises, 198 F.3d 715, 717 (8th Cir. 1999)). Courts have recognized, particularly in the employment context, that arbitration provisions which force employees to shoulder a substantial portion of the arbitration costs, as the agreement in this case does, effectively deter employees from vindicating their rights and are substantively unconscionable. See, e.g., Ramos v. Super. Ct., 239 Cal. Rptr. 3d 679, 704 (Cal. App. 1st Dist. 2018), as modified (Nov. 28, 2018), review denied (Feb. 13, 2019), cert. denied sub nom. Winston & Strawn LLP v. Ramos, 140 S. Ct. 108 (2019) ("The provisions requiring Ramos to pay half the costs of arbitration, pay her own attorney fees . . . and the confidentiality clause, are unconscionable and significantly inhibit Ramos's ability to pursue her unwaivable statutory claims."). As the Eleventh Circuit noted, the FLSA "provides for reasonable attorney's fees [and] the parties cannot contract in derogation of FLSA's provisions[.]" Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009). In this case, Plaintiff, who is an exotic dancer, has not been able to work for several months because of the COVID-19 pandemic, and has had to work at a reduced capacity since the summer, and has had no other source of income. See Grove Decl., Ex. 1. She would likely be forced to shoulder 50% of the cost of the arbitration proceedings. This result is plainly unconscionable. See Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 659 (6th Cir. 2003) ("[T]he potential of incurring large arbitration costs and fees will deter potential litigants from seeking to vindicate their rights in the arbitral forum"); Nesbitt v. FCNH, Inc., 811 F.3d 371, 378-79 (10th Cir. 2016) ("in many cases, if not most, employees considering the consequences of bringing their claims in the arbitral forum will be inclined to err on the side of

caution, especially when the worst-case scenario would mean not only losing on their substantive claims but also the imposition of the costs of the arbitration.").

The arbitration provision is silent as to which agency the arbitration must be filed before, or which state the arbitration would proceed in. However, neither AAA or JAMS have an office in the state of Iowa. Thus, the arbitration proceedings will require travel to a different state, and Plaintiff would be forced to bear the additional expense of traveling to arbitration hearings. In sum, the arbitration agreement is pervaded by procedural and substantive unconscionability and should not be enforced.

### E.  The Court Should Grant Plaintiffs' Motion for Conditional Certification and deny or Defer a Ruling on Defendants' Motion to Compel

As noted above, Plaintiff has filed a Motion for Conditional Certification in October 2020, to which Defendants have not submitted an opposition. The Court should, for the various reasons set out above, deny Defendants' bid to compel arbitration, particularly given Defendants' failure to produce arbitration agreements signed by the opt-ins. However, even if the Court ultimately reaches a different conclusion on Defendants' request to compel arbitration, its first step should be to grant Plaintiff's Motion for Conditional Certification and allow notice to issue to collective members in this case without further delay. See Grove, No. 20-cv-00193, Dkt. 85, p. 11 ("The arbitration issue us properly resolved at the second stage of the collective action certification process. The plaintiffs vigorously contest the validity and applicability of the arbitration clauses and…defendants have not shown by a preponderance of the evidence that the arbitration clauses are valid."). "Generally, the fact that a FLSA plaintiff has signed an arbitration agreement will not preclude preliminary certification of a collective action." Ortega v. Spearmint Rhino Companies Worldwide, Inc., 2019 WL 2871156, at *5 (C.D. Cal. May 15, 2019) (citing Conde

Case 1:20-cv-00027-SMR-SHL   Document 22   Filed 12/17/20   Page 15 of 16


v. Open Door Mktg., LLC, 223 F. Supp. 3d 949, 969 (N.D. Cal. 2017); D'Antuono v. C & G of

Groton, Inc., 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011)). "Because the existence of an

arbitration agreement 'goes to Defendants' defenses, not the common policy,' the enforceability

of arbitration agreements "is better reserved for the step two determination, not step

one." Ortega, 2019 WL 2871156, at *5 (quoting Conde, 223 F. Supp. 3d at 969). "Courts have

consistently held that the existence of arbitration agreements is 'irrelevant' to collective action

approval 'because it raises a merits-based determination[.]'" Varghese v. JP Morgan Chase &

Co., 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 9, 2016) (quoting D'Antuono, 2011 WL 5878045

at *4). This Court should likewise grant Plaintiff's motion for conditional certification without

delay, and in spite of Defendants' belated proffer of an arbitration agreement signed by Ms.

Grove.

**III.     CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss or Alternatively to Stay

Pending Arbitration should be denied in its entirety.


DATED:         December 17, 2020          Respectfully submitted,

                                          Andrea Grove, on behalf of herself
                                          and all others similarly situated,

                                          By her attorneys,


                                          /s/ Olena Savytska
                                          Harold Lichten (*pro hac vice*)
                                          Olena Savytska (*pro hac vice*)
                                          LICHTEN & LISS-RIORDAN, P.C.
                                          729 Boylston Street, Suite 2000
                                          Boston, MA 02116
                                          (617) 994-5800
                                          hlichten@llrlaw.com
                                          osavytska@llrlaw.com

Nate Willems
Rush & Nicholson P.L.C.
P.O. Box 637
Cedar Rapids, IA 52406
Tel: 319-363-5209
 Fax: 319-363-6664
Email:  nate@rushnicholson.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 17 day of December, 2020, a copy of the foregoing motion and all exhibits was filed electronically through the Court's CM/ECF system, which will send notice of this filing to all counsel of record.

/s/ Olena Savytska_____
Olena Savytska, Esq.