IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| ANDREA GROVE, individually and on behalf of all others similarly situated | ) ) ) | Case No. 1:20-cv-00027-SMR-CFB |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| BEER BARN CORPORATION, R & L B CORPORATION d/b/a IOWA PLAYHOUSE, RONALD BERGERON, MICHAEL BERGERON and LYNDA BERGERON | ) ) ) ) ) | ORDER ON PLAINTIFFS' MOTION TO ISSUE NOTICE AND MOTION TO STRIKE; DEFENDANTS' MOTION TO COMPEL |
| Defendants. | ) ) | |

Plaintiff Andrea Grove filed suit against Defendants Beer Barn Corporation, R & L B Corporation, Ronald Bergeron, Michael Bergeron, and Lynda Bergeron (collectively, "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA") and the Iowa Wage Payment Collection Law ("IWPCL"). [ECF No. 1]. Specifically, Plaintiff Grove alleges that when she worked as an exotic dancer at Iowa Playhouse, owned and managed by Defendants, she was classified as an independent contractor when she was in fact an employee as defined by the FLSA and IWPCL. She now moves to conditionally certify this suit as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all individuals who worked as exotic dancers for Defendants in the three years preceding her suit.[1]

On October 1, 2020, Plaintiff Grove filed a proposed notice to all potential class members, seeking the Court's authorization to issue the notice. [ECF No. 8]. She filed an Amended

---

[1] Not relevant to this Order, this suit is filed individually and as a class action under Rule 23 of the Federal Rules of Civil Procedure.

Complaint on November 20, 2020.  [ECF No. 16].  Defendants filed a motion to dismiss or stay

the case pending arbitration ("Motion to Compel") on December 3, 2020, asserting that Plaintiff

Grove agreed to settle any disputes between her and Defendants, arising out of her work at Iowa

Playhouse, through binding arbitration.  [ECF No. 19].  Defendants submitted a contract Plaintiff

Grove signed in July 2020 in support of their Motion to Compel.  [ECF No. 21-1].  Plaintiffs filed

a Resistance.[2]  [ECF No. 22].  Plaintiffs also move to strike Defendants' Reply brief, asserting

Defendants improperly submitted new evidence and raised new arguments in it.  [ECF No. 24].

For the reasons discussed below, Plaintiffs' Motion to Issue Notice, [ECF No. 8], is

GRANTED; Defendants' Motion to Compel, [ECF No. 19], is DENIED; and Plaintiffs' Motion

to Strike is GRANTED, [ECF No. 24].

## I.   BACKGROUND

## II.   ANALYSIS

### A.   *Motion to Strike*

Before addressing the other motions, the Court will first address Plaintiffs' Motion to

Strike.    Plaintiffs argue that Defendants improperly introduced new evidence—the

2018 Agreement—and new arguments in their Reply brief, violating the Local Rules.  *See* LR 7(g)

(providing that "the moving party may . . . file a reply brief . . . to respond to new and unanticipated

arguments made in the resistance"); *see also Taylor v. Midland Nat'l Life Ins. Co.*, No. 4:16-cv-

00140-SMR-HCA, 2019 WL 7500238, at *5 (S.D. Iowa May 3, 2019) (observing the practice of

disregarding new arguments raised in a reply brief as "rooted in basic fairness; because the moving

---

[2] Since the filing of the initial Complaint, Plaintiff Grove has submitted opt-in consent forms for four additional plaintiffs.  [ECF Nos. 6; 7; 14; 18].  Therefore, unless referring to a specific plaintiff, the Court will refer to Plaintiffs collectively in this Order.

party is typically given the last word when briefing a motion, it would be unfair to allow them to raise new arguments to which the opposing party has no chance to respond.").

Defendants oppose the Motion to Strike, insisting that the Reply brief does not raise new arguments but merely "supplements arguments made in Defendants' initial brief." [ECF No. 25 at 2]. The Court disagrees. The Reply brief does not *supplement* the arguments made in the original Motion to Compel; rather, it introduces a completely different agreement containing an arbitration provision wholly distinct from the original Motion and potentially material to the resolution of the Motion itself. Accordingly, Plaintiffs' Motion to Strike is GRANTED.

### B. Defendants' Motion to Compel

Defendants argue that Plaintiff Grove agreed to submit any disputes between her and Defendants, arising from her work at Iowa Playhouse, to arbitration and request the Court compel arbitration pursuant to the terms of the 2020 Agreement. They request the Court dismiss or stay this case pending arbitration.

Plaintiffs dispute there is a valid and enforceable arbitration agreement but also argue that compelling arbitration at this point is premature. Rather, Plaintiffs urge the Court to defer a determination of a valid and enforceable arbitration agreement to the second stage of class certification. *See Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 577 (N.D. Iowa 2005) (describing that certification under § 216(b) proceeds in two separate stages).

The United States Court of Appeals for the Eighth Circuit has not directly addressed whether a valid and enforceable arbitration agreement precludes a court from conditionally certifying a collective action in the first stage. However, other district courts in this circuits have regularly found that a determination of any valid and enforceable arbitration clause is more appropriately considered at the second stage. *See, e.g., Astarita v. Menard, Inc.*, Case No. 5:17-

06151-CV-RK, 2020 WL 591509, at *2 (W.D. Mo. Feb. 6, 2020) (determining that consideration of arbitrability at the notice stage is improper); *Brooks v. C.H. Robinson Int'l, Inc.*, No. 416CV00939761HFS, 2017 WL 10506772, at *3 (W.D. Mo. May 9, 2017) (observing "[c]ourts have routinely granted conditional certification despite the existence of arbitration issues."); *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 818 (W.D. Mo. 2005) (granting conditional certification prior to ruling on arbitration issue).

The Court agrees with Plaintiffs that the arbitration determination is premature and is better reserved for the second stage of certification. Several reasons support this conclusion. First, the existence of any valid arbitration agreement is both a merits determination which requires the Court to resolve issues of fact on a thin record—something not appropriate at the initial certification stage. *See Gonzalez v. Diamond Resorts Int'l Mktg.*, No. 2:18-cv-00979-APG-CWH, 2019 WL 3430770, at *5 (D. Nev. July 29, 2019) ("Withholding notice because of the existence of an arbitration agreement presupposes the enforceability of the agreement . . . the existence of an arbitration agreement goes to an aspect of defendant's defense, and the enforceability of such an agreement is better reserved for stage two."); *Hernandez v. Immortal Rise, Inc.*, No. 11 CV4360(RRM)(LB), 2012 WL 4369746, at *5 (E.D. N.Y. Sept. 24, 2012) (finding the "existence of arbitration agreements is irrelevant to class certification, because it raises a merits-based determination"); *Romero v. La Revise Assoc. LLC*, 968 F.Supp.2d 639, 647 (S.D. N.Y. 2013) (denying motion to compel arbitration because "defendants' proposal essentially amounts to an invitation for the Court to adjudicate the validity of the arbitration agreements"). Second, there are already multiple opt-in plaintiffs, and Defendants have not produced any agreements for those plaintiffs indicating a consent to arbitrate disputes. Accordingly, Defendants' Motion to Compel,

[ECF No. 19], is DENIED.  Defendants may renew their Motion to Compel at the second, merits stage of certification.

### C.  Motion to Issue Notice

#### 1.  Conditional class certification under § 216(b)

Plaintiffs have filed a Motion to Issue Notice, requesting the Court's permission to notify all potential class members of their option to join the lawsuit as an opt-in under § 216(b).  Plaintiffs argue that conditional certification is appropriate because they, and other dancers working at Iowa Playhouse, were all subject to the same rules and policies imposed by Defendants and were thus improperly classified as independent contractors when they should have been classified as employees.  As a result of the incorrect classification, the dancers did not receive a minimum wage, violating the FLSA.

An FLSA collective action under § 216(b) is distinct from a class action under Rule 23.  In a Rule 23 class action, once a class is certified, a potential class member must request exclusion from the class if they do not wish to participate.  *See* Fed. R. Civ. P. 23(c)(2) (describing notice requirements); *Jones v. Casey's Gen. Stores*, 538 F. Supp.2d 1094, 1105 (S.D. Iowa 2008) (noting that Rule 23 "require[s] putative class members to opt *out* if they do not wish to be bound by the outcome of the class action").  Conversely, a potential class member must file written consent with the court, or opt-*in*, to participate in a collective action under § 216(b).  *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

Second, a § 216(b) collective action does not require a plaintiff to show that common questions will predominate, that a class action is superior, or that the claim is typical for the class as a whole.  *Dilonez v. Fox Linen Serv. Inc.*, 35 F. Supp. 3d 247, 252 (E.D. N.Y. 2014) ("A collective action under the FLSA is different than a typical class action . . . numerosity,

commonality, typicality, and adequate representation—do not apply to a collective action."). Rather, a plaintiff only needs to show that she and other potential class members were subject to a common decision, policy, or plan that affected all class members similarly. *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007).

Furthermore, the standard for conditional certification of a collective action under § 216(b) is not onerous. *Campbell v. Amana Co., L.P.*, No. C99-75 MJM, 2001 WL 34152094 (N.D. Iowa Jan. 4, 2001) ("Because the initial conditional certification is based on little or no discovery, the 'burden on the plaintiff is not a stringent one,' and conditional certification of a representative class is generally granted."). The bar for conditional certification is very low because "[t]he sole consequence of conditional certification [under the FLSA] is the sending of court-approved written notices to employees." *Symczyk*, 569 U.S. at 75 (citing *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 171–72 (1989)). "[T]he question of whether to certify a FLSA collective action lies with the discretion of the district court . . . ." *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1019 (S.D. Iowa 2016).

Courts in the Eighth Circuit generally use a "two-step" approach to collective action certification under § 216(b). At the first stage, often referred to as the "notice stage," plaintiffs simply need to "provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Dietrich*, 230 F.R.D. at 577 (citation omitted). The Court does not weigh contradictory evidence or assess credibility at the notice stage. *Loomis v. CUSA LLC*, 257 F.R.D. 674, 676 (D. Minn. 2009). Rather, the Plaintiffs need only to provide a "colorable basis for [their] claim that the putative class members were together the victims of a single decision, policy, or plan." *Id.* Courts will usually rely on affidavits and other supporting documents attached to the pleadings during the notice stage when evaluating whether to

conditionally certify a class.  *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010)  ("In a typical case, the court decides whether to conditionally certify a class based solely on the plaintiffs' affidavits."); *Rappaport v. Embarq Mgmt. Co.*, No. 6:07-cv-468-Orl-19DAB, 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007).  Once a plaintiff satisfies the notice stage, potential members of the collective action are "given notice and the opportunity to 'opt-in.'"  *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 363 (W.D. Mo. 2007) (citation omitted).

During the second stage, known as the merits stage, defendants may move to decertify the class.  *Littlefield,* 679 F. Supp. 2d at 1016–17.  At this point, a court will engage in a more rigorous evaluation of the class to ascertain whether the named plaintiff is similarly situated with the opt-in plaintiffs.  *Tegtmeier*, 208 F. Supp. 3d at 1019.  This evaluation comes after discovery has proceeded and the court has more information available to it.  *Fast*, 243 F.R.D. at 363.  The more rigorous second stage analysis consists of "a fact intensive inquiry of several factors, including: (1) the extent and consequence of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations."  *Tegtmeier*, 208 F. Supp .3d at 1019 (citing *West v. Border Foods, Inc.*, Civ. No. 05-2525(DWF/RLE), 2006 WL 1892527, at *3 (D. Minn. June 12, 2006)).

Here, the Court is satisfied that Plaintiffs have made the "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Fast*, 243 F.R.D. at 363; *see also Burch v. Qwest Commc'n Intern., Inc.*, 500 F. Supp. 2d 1181, 1190 (D. Minn. 2007) (finding "[p]laintiffs have established a colorable basis" for an FLSA violation).  They have alleged that the class members are similarly situated

because "all dancers working at Playhouse were uniformly classified as independent contractors, [they] were not paid any wages by Playhouse, performed the same job duties, and were subject to the same rules and policies." [ECF No. 8-1 at 9].

Plaintiff Grove submitted a declaration asserting that Defendants required her to "work a minimum of 3 shifts a week," and if she was tardy or absent, she was required to pay a fine to Iowa Playhouse. [ECF No. 8-4 ¶¶ 8–9]. She claims her performances were subject to fairly strict control by Iowa Playhouse management including the requirement she "be nude within the first minute" of a dance performance and, once completed, she was required to dress "by a security table next to the stage." *Id.* ¶ 12. Her compensation for "private dances" was set by Iowa Playhouse and she was occasionally required to "perform two-for-one dances" on some nights. *Id.* ¶ 15. She alleges she was not paid any wages from Iowa Playhouse and her "only compensation" was money paid in exchange for dances, of which a fixed amount was paid to Iowa Playhouse. *Id.* She was obligated to "tip out" other staff members—including "the manager, the DJ, and the bouncers"— after she finished for the night. *Id.* ¶ 10. Plaintiff Grove declares that other dancers at Iowa Playhouse were also "classified as independent contractors, and [they] were subject to the same rules, requirements, and compensation structure." *Id.* ¶ 6.

These allegations are echoed by Laure-Ann Feller-Thoms, an opt-in Plaintiff. *See* [ECF No. 6-1]. Plaintiff Feller-Thoms alleges she was an exotic dancer at Iowa Playhouse between fall 2017 and spring 2018. [ECF No. 8-5 ¶ 2]. During that time, she alleges she was classified as an independent contractor. *Id.* ¶ 3. She was also required to work a minimum of three shifts per week and was fined for tardiness or missing a shift. *Id.* ¶ 4. Plaintiff Feller-Thoms says she was required to pay a $45 "house fee" to Iowa Playhouse for each shift she worked there. *Id.* ¶ 5. She recounts similar requirements as Plaintiff Grove pertaining to the working conditions at Playhouse:

she was required to remove all her clothes within one minute of beginning a dance, the prices she was able to charge were determined by Iowa Playhouse, and the only remuneration she received was from private dances she performed for customers. *Id.* ¶¶ 6–9. At the conclusion of her shift, she was required to share her tips with other staff at Iowa Playhouse. *Id.* ¶ 10. Like Plaintiff Grove, Plaintiff Feller-Thoms says other dancers were subject to these same rules and working conditions. *Id.* ¶ 12.

Plaintiffs allege that the working conditions described in the affidavits submitted by Plaintiff Grove and Plaintiff Thoms-Feller constitute adequate evidence to make a preliminary showing that Defendants violated the minimum wage requirements of the FLSA. They assert that the affidavits demonstrate dancers who worked at Iowa Playhouse were similarly situated for purposes of conditional certification under § 216(b). Plaintiffs point out that numerous other district courts have found conditional certification of collective actions for exotic dancers to be appropriate.[3] The Court finds that Plaintiffs have satisfied their burden at the notice stage and conditionally certifies the proposed class.

## 2. Proposed notice

"[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffmann–La Roche*, 493 U.S. at 169. The purpose of court involvement in the notice process is to "ensure that [notice] is timely, accurate, and

---

[3] *See, e.g., Murray v. Silver Dollar Cabaret, Inc.*, Case No. 5:15-CV-5177, 2017 WL 514323, at *2 (W.D. Ark. Feb. 8, 2017); *Woods v. Club Cabaret, Inc.,* 140 F. Supp. 3d 775, 781–82 (C.D. Ill. 2015); *Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 527 (S.D. N.Y. 2015); *Romero v. ABCZ Corp.,* No. 14 Civ. 3653(AT)(HBP), 2015 WL 2069870, at *5 (S.D. N.Y. Apr. 28, 2015); *Kelsey v. Ent. U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1066 (D. Ariz. 2014); *Espinoza v. Galardi South Enters., Inc*., No. 14-21244-CIV, 2014 WL 5410307, at *5 (S.D. Fla. Oct. 23, 2014); *Bonton v. Centerfold Ent. Club, Inc*., CASE NO. 6:14-CV-6074, 2014 WL 12837002, at *2 (W.D. Ark. Oct. 9, 2014); *Cruthis v. Vision's*, No. 4:12CV244 KGC, 2013 WL 4028523, at *4 (E.D. Ark. Aug. 7, 2013).

informative" and avoids "misleading communication" to potential class members. *Id.* at 171–72.

"Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative

suits and setting cutoff dates to expedite disposition of the action." *Id.* Plaintiffs ask the Court to

exercise its discretion in this case, asserting that its proposed notice "meets the timeliness, accuracy

and informational requirements" of *Hoffman-La Roche*. [ECF No. 8-1 at 13].

> Plaintiffs proposed notice attached to their Motion, [ECF No. 8-2], reads as follows:

> Enclosed is a consent form allowing you to "opt-in" to participate in a case that has been filed by another dancer at Iowa Playhouse in Council Bluffs, Iowa, under state and federal wage law. The federal claims in this case have been brought on behalf of anyone who has worked as a dancer at Iowa Playhouse during the last three years. **This is a court-authorized notice.**

> If you worked as a dancer at Iowa Playhouse at any time since [August 13, 2017], you are eligible to participate in this case. To participate and obtain a portion of any judgment or settlement that may be entered in the dancers' favor under federal law, you must complete and return this consent form to the address below by **no later than [Ninety days after notice mailing], [2021].**

> In this lawsuit, the Plaintiff alleges that the Defendants, Iowa Playhouse, Ronald Bergeron and Michael Bergeron, violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., because they misclassified the club's dancers as independent contractors instead of as employees and failed to pay them the federal minimum wage.

> The Defendants deny that they violated the FLSA, and contend that dancers at Iowa Playhouse are properly classified as independent contractors rather than employees and are not owed any wages under the FLSA.

> The case is in an early stage, and there has not been a decision by the court as to whether the Plaintiff's position or the Defendants' position is the correct one. There has also not been any settlement reached. If you do not return the enclosed consent form by **[Ninety days after notice mailing], [2021],** you will not be considered part of the federal wage claims in this case and will be unable to receive a share of any settlement or judgment that the Plaintiff may obtain under federal law. If you do participate in the case, you will be

bound by any ruling entered by the court or settlement reached by the parties.

The Plaintiff who initiated this case will work with us to make decisions regarding the progress of this litigation, and we welcome your input as well into those decisions.  You may also be asked to be a witness or to provide evidence in the case, although not all individuals who submit a consent form will be required to do so.

**Again, to join this case, you must return the enclosed consent form to the address below no later than [Ninety days after notice mailing].**

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
claims@llrlaw.com
www.llrlaw.com

**This notice has been authorized by the United States District Court**.  Please do not contact the court; you may contact the counsel listed above with any questions.

[ECF No. 8-2] (emphasis in original).

Plaintiffs urge that a ninety-day period for potential class members to return the opt-in notice is proper because turnover is high among exotic dancers which leads to difficulties in contacting potential class members.  They request the Court allow the opt-in notice to be sent via mail, email, and text message "to all current and former exotic dancers who have worked at Playhouse within the past three years and were classified as independent contractors, and that notice also be posted on Defendant's premises."  *Id.* at 14.  Plaintiffs request the Court authorize follow-up notices be provided to all potential class members who received an initial notice but fail to respond within forty-five days of issuance.  To further facilitate notice to all potential class members, Plaintiffs ask the Court to order Defendants "to produce the names, last known mailing and email addresses, and telephone numbers for all collective action members."  *Id.* at 15.

-11-

When evaluating the content of a proposed notice, district courts should ensure that "notices are timely, accurate, and informative," but should be "cautious to avoid endorsing, or appearing to endorse, the merits of the underlying claim." *Littlefield*, 679 F. Supp.2d at 1018 (citation omitted). Changes should not be made by the Court unless necessary. *Id.*

The Court finds the proposed notice is accurate and informative to recipients. It properly describes the state of the case and correctly explains the law. The substantive references to the Court in the notice do not give the appearance of endorsement by the Court of either party's position: (1) "[t]his is a court-authorized notice"; "there has not been a decision by the court as to whether the Plaintiff's position or the Defendants' position is the correct one." [ECF No. 8-2 at 2]. Defendants did not file a resistance to the motion to issue notice, and the Court does not divine any other issues with the substance of the proposed notice.

As to the period of notice, the Court finds that ninety-day window is reasonable. Plaintiffs' claim that the potential class members are a part of profession with high turnover and are particularly transient. This, Plaintiffs argue, makes them more difficult to contact requiring a longer notice period. The Court finds this unobjectionable, especially considering other courts have granted notice periods of ninety days. *See, e.g., Benion v. Lecom, Inc.*, Case No. 15-14367, 2016 WL 2801562, at *11 (E.D. Mich. May 13, 2016); *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012); *Calderon v. Geico Gen. Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *2, 8–9 (D. Md. Jan. 12, 2011); *Wass v. NPC Intern., Inc.*, No. 09-2254-JWL, 2011 WL 1118774, at *11 (D. Kan. Mar. 28, 2011); *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 68–69 (E.D. Pa. 2009).

Given the purpose of notice of a collective action is to allow as many potential plaintiffs as possible the opportunity to participate in a case, the Court finds that a reminder notice to

potential class members after forty-five days, if no response is provided, is proper.  Other district courts approving FLSA collective notices have come to a similar conclusion.  *See Morris v. Lettire Const., Corp.*,  896 F. Supp. 2d 265, 275 (S.D. N.Y. 2012) (holding a reminder notice is appropriate under the FLSA because notice "is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in."); *Sanchez v. Sephora USA, Inc.*, No. 11-02285 SBA, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012) (approving a second, identical notice to be issued thirty days following initial notice); *Gee v. Suntrust Mortg., Inc.*, No. C-10-1509-RS, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) (authorizing second notice forty-five days after first notice); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) (finding that a "postcard reminder notice after the class notice" is appropriate and not harassing).

Finally, the Court has no issue with Plaintiffs' proposed methods of contacting potential class members.  Although mail has historically been a common method of providing notice to potential class members, email and text messages are among the most common means of communications in the twenty-first century and would be effective to disseminate notice.  Other courts have also found that email can facilitate notice efficiently and at low cost.  *See Phelps v. MC Commc'n, Inc.*, No. 2:11-CV-00423-PMP-LRL, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011) ("Email is an efficient, reasonable, and low-cost supplemental form of notice, particularly where Defendants may lack current physical mailing address information for its former employees.").

Plaintiffs assert that text message notices are necessary due to the transient nature of the potential class members.  The Court holds that in light of the unrefuted claims by Plaintiffs that potential class members are transient—lacking a regular permanent address or reliable email access—text messages can be a useful method to provide notice.  *See Avendano v. Averus, Inc.*,

No. 14-cv-01614-CMA-MJW, 2016 WL 11692088, at *1–2 (D. Colo. Oct. 25, 2016) (finding text message to be a viable method of notifying transient prospective class members); *Bhumithanarn v. 22 Noodle Market Corp*., No. 14-cv-2625 (RJS), 2015 WL 4240985, *5 (S.D. N.Y. July 13, 2015) (same).

Finally, Plaintiffs request the Court order Defendants to post the notice on their premises and provide "last known mailing and email addresses, and telephone numbers" for all potential class members. [ECF No. 8-1 at 15]. Posting notice of FLSA actions on an employer's premises in areas accessible to employees is "routinely approve[d]" by courts. *Putman v. Galaxy 1 Mktg.., Inc.*, 276 F.R.D. 264, 277 (S.D. Iowa 2011); *see also Simmons v. Enterprise Holdings, Inc.*, No. 4:10CV00625 AGF, 2011 WL 855669, at *2 (E.D. Mo. Mar. 9, 2011) (approving "conspicuous[]" notice in employee break room); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 96 (E.D. N.Y. 2010) (observing that "such a practice [of notice on employer property] has been routinely approved in other cases.").

III.    CONCLUSION

Plaintiffs' Motion to Issue Notice, [ECF No. 8], is GRANTED; Defendants' Motion to Compel, [ECF No. 19], is DENIED; and Plaintiffs' Motion to Strike, [ECF No. 24], is GRANTED.

Defendants shall post the approved notice in an area regularly accessible to its employees within 14 days of the date of this Order. Defendants are further ordered to provide Plaintiffs' counsel with the last known mailing address, email address, and phone numbers from any individual who worked as an exotic dancer at the Iowa Playhouse within the three years preceding the date of this Order.

Plaintiffs are authorized to send the class notice, [ECF No. 8-2], to individuals who worked as an exotic dancer at Iowa Playhouse within the three years preceding the date of this Order, in the manner described in this Order.

IT IS SO ORDERED.

Dated this 21st day of April, 2021.

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT