| | |
|---|---|
| **UNITED STATES FEDERAL COURT**<br>**SOUTHERN DISTRICT OF IOWA** | |
| **ANDREA GROVE**, individually and on behalf of all others similarly situated<br><br>Plaintiff, | Case No, 1:20-CV-27-SMR-CFB |
| **BEER BARN CORPORATION, R& L B CORPORATION d/b/a IOWA PLAYHOUSE, RONALD BERGERON, MICHAEL BERGERON, and LYNDA BERGERON**<br><br>Defendants, | **DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL \\** |

Defendants Beer Barn Corporation, R&LB Corporation d/b/a Playhouse Theatre ("Playhouse Theatre"), Ronald Bergeron ("Ron"), Michael Bergeron ("Michael") and Lynda Bergeron Lynda(collectively "Defendants") submit this Opposition to Plaintiff's Motion to Compel.

## PROCEDURAL BACKGROUND

Plaintiff filed her motion to compel on May 7, 2021. (Filing No. 29) Plaintiff's motion was filed immediately on the heels of Defendants having provided Plaintiff's counsel with the only information it possessed identifying all former individuals who performed at the Playhouse Theatre at any time during the prior three (3) years. Defendants provided the names of 199 performers who had performed their acts at the Playhouse Theatre as licensees/lessors since 2017.

In a follow up communication, Defendants' counsel informed Plaintiff's counsel that Defendants did not possess contact information except for four (4) individuals who were listed at the beginning of the list of names for putative class members. (See

Index of Evidence, Exhibit A, White Declaration.)[1]  Defendants' lack of contact information is consistent with Defendants' position (since long before this litigation commenced), that putative class members are independent contractors who act as licensees and space lessees at the Playhouse Theatre, not as employees.  Accordingly, Playhouse Theatre has and had had no duty or obligation to gather and/or retain contact information for any performer.  Tax documentation, such as a Form 1099 is not required for independent contractor performers who receive less than $600 from Playhouse Theatre.  According to Defendants' financial advisors, Defendants were advised they have no tax or financial obligation to performers if the Playhouse Theatre, where the independent contractor performers performed their acts, did not pay any such performer more than $600 during the subject tax year.  (Exhibit B, Lynda Bergeron Declaration, at ¶ 15.)  *See also* Exhibit A, Attachment 1*, 2020 Instructions for Forms 1099-MISC and 1099-NEC.)*

Plaintiff filed her lawsuit on August 13, 2020.  Defendants were served on September 21, 2020. ([Filing No. 10, at pp. 1-3](#).)   Until the date Defendants were served, no defendant had notice that the present litigation was anticipated or forthcoming.   (Exhibit B, Lynda Bergeron Declaration, at ¶ 22.)

Defendants have conducted extensive searches for data , documents,  and all forms of contact information for performers who have performed at the Playhouse Theatre since 2017.   (Exhibit B, Lynda Bergeron Declaration, at ¶ 23.; Exhibit C, Michael Bergeron Declaration at ¶ 7.)  Defendants have produced the only information located.

---

[1] All references in this Brief to the Exhibits, are contained in the Defendants' Index of Evidence filed simultaneously with this Brief.

Until August 2019, if a new performer signed up to perform at the Playhouse Theatre, the performer completed necessary paperwork, and the Playhouse Theatre reviewed the performers' identification. (Exhibit C, Michael Bergeron Declaration, at ¶ 17, Exhibit B, Lynda Bergeron Declaration at ¶ 1.) This information was reviewed by Michael Bergeron (to confirm the performer's age.. (Exhibit B, Lynda Bergeron Declaration, at ¶ 21.) Consistent with Playhouse Theatre's policy, all performers' personal confidential information is then destroyed because the Playhouse Theatre does not have a need to maintain that personal contact information. (*Id.* at ¶ 21; Exhibit C, Michael Bergeron Declaration, at ¶ 14.) Thus, since Fall 2019 until the onset of the Andrea Grove lawsuit, the Playhouse Theatre has destroyed all personal identifying information because of the potential issues of identification theft if the information were retained, and the Playhouse Theatre's lack of a legitimate need for such information. (*Id.*) The Playhouse Theatre does not selectively discard certain performers' confidential personal identification information. All such materials are destroyed because the Playhouse Theatre has neither an obligation nor a need to maintain the performers' personal contact information. (*Id.*)

The Playhouse Theatre does not now schedule performers to perform on a certain day, date, or at a certain time. (*Id.*; Exhibit B, Lynda Bergeron Declaration, at ¶ 20; Exhibit C, Michael Bergeron Declaration, at ¶ 14.) The only individual who has control over a performer's schedule is the performer herself.

## LEGAL ANALYSIS

### I. **Defendants Do Not Possess Documents Personal Confidential Contact Information.**

Case 1:20-cv-00027-SMR-SHL   Document 32   Filed 05/21/21   Page 4 of 8

"Identifying the boundaries of the duty to preserve involves two related inquiries: *when* does the duty to preserve attach, and *what* evidence must be preserved." *Caltenco v. G.H. Food, Inc.*, 2018 WL 1788147, at *4 (E.D.N.Y., Mar. 7, 2018) *quoting Star Direct Telecom, Inc. v. Glob. Crossing Bandwith, Inc.*, , 2012 WL 1067664, at *3 (Mar. 22, 2012), *R&R adopted*, 2012 WL 4509877 (W.D.N.Y. Sept. 28, 2012). The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation*." Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). Once the duty to preserve attaches, "[a] party or anticipated party must retain all relevant documents (but not multiple identical copies) *in existence at the time the duty to preserve  attaches,* and any relevant documents created thereafter." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (emphasis added).

A duty to preserve requested information must be based on documents that existed at the time the litigation began. *Caltenco*, 3028 WL 1788147, at *4. That duty arises when a party has evidence that a party knows or should know the evidence is relevant to a claim that is in litigation or is likely to be litigated. *Rimkus*, 688 F. Supp. 2d at 612–13.

> 'While a litigant is under no duty to keep or retain every
> document in its possession...it is under a duty to preserve what
> it knows, or reasonably should know, is relevant in the action,
> is reasonably calculated to lead to the discovery of
> admissible evidence, is reasonably likely to be requested
> during discovery and/or is the subject of a pending discovery
> request."

*Edwards v. 4JLJ, LLC*, No. 2:15-CV-299, 2018 WL 2981154, at *2–3 (S.D. Tex. June 14, 2018, *quoting Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)

(ellipses in original; citing *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991) (quoting *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984)

The legal principle that a party can only produce those documents in its possession is self-evident. *See Trocki Hotels, LP v. Choice Hotels Int'l, Inc.,* 2011 WL 13141484, at *2 (D.N.J. Oct. 21, 2011 ) (noting a "court can only compel discovery which exists" and where party contends it does not have additional responsive documents such an Order is futile.)

Defendants in this case did not possess the personal confidential contact for performers classified as licensees and/or lessees who were independent contractors , based on the performers' own selection of that status over that of an employee.   No later than August 2019, the Playhouse Theatre  sought the advice of its regular corporate accountant, Shawn McDonald, to determine its obligations to collect and retain the performer personal confidential contact information for performers .  (Exhibit B, Lynda Bergeron Declaration at ¶ _.)  A party's reliance on an accountant is a sufficient step to create a genuine dispute of material fact as to an employer's good faith. *See, e.g., Franco v. Jubilee First Ave. Corp.,* 2016 WL 4487788, at *16 (S.D.N.Y. Aug. 25, 2016) (denying the plaintiff employees' summary judgment motion because the defendants "testified that at both ... locations they relied on advice from payroll companies regarding compliance with federal and state wage-and-hour laws"); *see also Genao v. Blessed Sacrament Schl.*, 2009 WL 3171951, at *11 (E.D.N.Y. Oct. 1, 2009) (declining to award liquidated damages in part because the defendant "was not aware of the intricacies of the FLSA and  relied on the accountant to review the

[employer's] records"); *Cucu v. 861 Rest. Inc.,* 2017 WL 2389694, at *5 (S.D.N.Y., June 1, 2017)

Defendants did not destroy any documents or information applicable to the merits of Named Plaintiff's' claims once the instant litigation was pending. The Eighth Circuit has held that the mere prospect of litigation is insufficient to support a finding of bad faith. *Greyhound Lines*, 485 F.3d at 1035 ("The ultimate focus for imposing sanctions for spoliation is the intentional destruction of evidence indicating a desire to suppress the truth, not the prospect of litigation."). *Ramirez-Cruz v. Chipotle Servs., LLC*, No. 15-CV-4514, 2017 WL 8947191, at *5 (D. Minn., May 11, 2017), *report and recommendation adopted,* No. CV 15-4514, 2017 WL 3433116 (D. Minn., Aug. 10, 2017); *Ramirez-Cruz v. Chipotle Servs., LLC*, 2017 WL 8947191, at *5 (D. Minn., May 11, 2017), *report and recommendation adopted*, 2017 WL 3433116 (D. Minn., Aug. 10, 2017) (finding that Chipotle had no duty to preserve the documents prior to being served with the complaint ).

## II.     **The Best Notice Possible is Publication.**

In collective actions, the "'best notice practicable' does not require actual notice, nor does it require individual mailed notice where there are no readily available records of [potential] class members' individual addresses or where it is otherwise impracticable." *In re Auto. Parts Antitrust Litig.*, , 2016 WL 8200513, at *8 (E.D. Mich. Oct. 7, 2016), *citing Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548-53 (N.D. Ga. 1992); *Manual for Complex Litigation* § 21.311, at 288 (4th ed. 2004).

Defendants do not have the information reflecting the performers' person and confidential contact information.   Further, many performers appear on stage at the Playhouse Theatre under stage names, rather than using their true or given names, making it nearly impossible for Defendants to determine  the accuracy of the names

Accordingly, the best and most practicable mean available to advise putative members of the conditionally certified class in this case is via publication of the notice in a local newspaper.   Out of fairness, the cost of publication  should not be borne solely by Defendants, but should be shared by Named Plaintiff and those who have already opted in to the litigation without the benefit of any notice at all, whether mailed or published  AT the very least, the Defendants should be allowed amend  the notice to advise potential opt in plaintiffs that they could  be assessed pro rata costs for publication of the notice  at the conclusion of the lawsuit, depending on the outcome. . .

## **CONCLUSION**

Where, as here, Defendants do not possess the personal confidential contact information sought, it is a futile act to compel production of such information.  The performers' confidential  personal contact information is legitimately not in Defendants' possession.

Defendants agree that the best mean available to advise putative members of the conditionally certified class in this case is via publication of the notice in a local newspaper.   Out of fairness, the cost of publication  should not be borne solely by Defendants, but should be shared by Named Plaintiff and those who have already opted in to the litigation without the benefit of any notice at all, whether mailed or published.

Defendants should be allowed to add to the notice that putative plaintiffs who opt-in to the litigation may bear a pro rate share of costs associated with the publication

DATE: May 21, 2021.

        Beer Barn, R & LB Corporation d/b/a/ Iowa Playhouse, Ronald Bergeron, Michael Bergeron, and Lynda Bergeron, Defendants

        BY: /s/ *Terry A. White.*
        Terry A. White  AT0009158
        CARLSON & BURNETT, LLP
        2002 Douglas Street Suite 100
        Omaha, NE 68102
        (402) 682-8006
        Attorney for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2021, I electronically filed the foregoing with the Court's CM/ECF system, which will send notification of such filing to the following:

    nate@ruchnicholson.com

    and

    hlichten@llrlaw.com
    osavytska@llr.aw.com

        /s/ *Terry White*
        Terry A. White

2